ROSWELL D. PINE, Jr., AND DUFF SMITH, PLAINTIFFS-
RESPONDENTS, v. ADAM OKZEWSKI AND OSCAR
TRIGGER, DEFENDANTS-APPELLANTS.

Submitted October 27, 1933—Decided February 2, 1934.

For the appellants, *James A. Hamill* (*William George,* of counsel).

For the respondents, *William L. Rae.*

The opinion of the court was delivered by

HEHER, J. This is an appeal from a judgment of the Supreme Court, affirming a judgment of the First District Court of Jersey City, in favor of plaintiffs, in an action in tort for false imprisonment.

On September 18th, 1932, respondents, while driving through the city of Jersey City, in an automobile owned and operated by Smith, were intercepted by appellants in the performance of their duties as police officers, assigned to service in the traffic bureau of the city's police department. Respondents were residents of the State of Oklahoma. They were students en route to their respective universities in New England. The vehicle bore Oklahoma registration plates. It resembled an automobile that had been stolen in the city of Newark the day before, and it was stopped to afford the police officers an opportrnity to determine whether it was the stolen car. An examination of the motor number disclosed that it was not. The officers demanded the production of the registration certificate and driver's license. Smith did not possess a driver's license. He informed the officers that such a license was not required by the laws of his state. Respondents testified that they were then informed

by the officers that they "would be held for investigation."
They were taken by the officers to a nearby station house, and
placed in the "reserve room." They were advised that "they
would have to remain there until the investigation was com-
pleted." While they were not locked in the room, one of the
officers remained with them, and it cannot be gainsaid that
they were detained pending the investigation. When it was
ascertained that the laws of Oklahoma did not require the
licensing of motor vehicle operators, they were released.
There was no complaint charging a violation of law. Re-
spondents testified that they were detained from six P. M. to
eight P. M., while appellants insist that the period of deten-
tion did not exceed forty minutes. But this divergence in
the testimony does not relate to a material matter. It is not
suggested that a detention, originally lawful, became unlaw-
ful because unreasonably prolonged. It is claimed that the
detention was unlawful *ab initio,* and it was on this theory
that the cause was tried and determined in the District Court,
and the judgment sustained in the Supreme Court.

The sole ground for reversal urged by appellants is that
there was justification for the detention of respondents, and
that, therefore, the evidence did not warrant a judgment in
their favor. This claim is well founded. The gist of the
action for false imprisonment is an unlawful detention. The
essential thing is the constraint of the person, without legal
justification. *Hebrew* v. *Pulis,* 73 *N. J. L.* 621; *Wiegand* v.
*Meade,* 108 *Id.* 471. Imprisonment or any restraint of the
personal liberty of another is actionable, when done without
lawful authority. "Imprisonment is any restraint of the per-
sonal liberty of another; any prevention of his movements
from place to place, or his free action according to his own
pleasure and will; a man is imprisoned when he is under the
control of another in these respects or either of them, against
his own will. It is false imprisonment when this is done
*without lawful authority,* and such imprisonment is deemed
an assault in law, though no assault in fact is made; the one
includes both offenses, the act being unlawful." *Johnson* v.
*Tompkins,* 13 *Fed. Cas. No.* 7416; 1 *Baldw.* 571, 600. The

fundamental difference between an action for malicious prosecution, and one for false imprisonment, is that in the former the detention is malicious, but under the due forms of law, whereas in the latter the detention is without color of legal authority. *Johnson* v. *Girdwood,* 28 *N. Y. Supp.* 151; *affirmed,* 143 *N. Y.* 660; 39 *N. E. Rep.* 21; *Johnstone* v. *Sutton,* 1 *T. R.* 544; 99 *Reprint* 1243; 1 *E. R. C.* 765; *Pandjiris* v. *Hartman,* 196 *Mo.* 539, 545; 94 *S. W. Rep.* 270.

The inquiry therefore is whether there was legal justification for the detention of respondents. The Supreme Court, in answering this in the negative, invoked the common law rule that, to prevent the escape of a felon, a peace officer had authority to arrest anyone whom he reasonably suspected to have been engaged in the perpetration of a felony, and that, to prevent breaches of the peace, he had the right to arrest any person who was engaged in, or in his presence threatened to engage in, an affray or other breach of the peace, and that beyond this the law did not allow him to exercise the function of determining whether there was a sufficient cause for an arrest. *Mayor, &c., of Newark,* v. *Murphy,* 40 *N. J. L.* 145; *Brown* v. *State,* 62 *Id.* 666; *Collins* v. *Cody,* 95 *Id.* 65.

But the authority to arrest, in the circumstances here presented, is derived from chapter 208 of the laws of 1921, (*Pamph. L.* 1921, *p.* 643), as amended by chapter 171 of the laws of 1931. *Pamph. L.* 1931, *p.* 347. This act requires the registration of all automobiles driven in this state, whether owned by residents or non-residents, and the licensing of operators of such vehicles. It directs that the driver's license shall have endorsed thereon the name of the licensee, in his own handwriting, and that this license and the registration certificate shall be in the possession of the driver or operator at all times when the driver or operator is in charge of the vehicle on the highways of the state. A further requirement is that the driver shall, when so requested by a police officer engaged in the performance of his duties under the act, exhibit his operator's license and the registration certificate, and write his name in the presence of the officer, so that the latter may determine the identity of the licensee and

the correctness of the registration certificate. A non-resident owner, who has registered his vehicle in, and has complied with the laws of, the state of his residence, and a non-resident chauffeur or driver, who has complied with the laws of his state with respect to the licensing of drivers or chauffeurs, are exempted from the registration and licensing provisions for a period of ninety days in each calendar year, provided such non-resident chauffeur or driver shall, at all times while operating a motor vehicle in the state, have in his possession the registration certificate of the vehicle which he shall then be operating and his driver's license, and "shall exhibit said registration certificate and driver's license to any motor vehicle inspector, police officer, or magistrate, who, in the performance of the duties of his office, shall request the same." It is a misdemeanor to operate or use a motor vehicle without the permission of the owner.

Section 31 (1) vests in any constable or police officer authority to arrest, *without warrant,* any person violating, *in the presence of such officer,* any of the provisions of the act, and to bring the defendant before any magistrate of the county where such offense has been committed. It is therein provided that in the event of a violation of a provision other than subdivision three of section 14 (relating to driving while under the influence of intoxicating liquor or habit-producing drug), the person so offending shall be detained until such officer shall make oath or affirmation, declaring that the person under arrest has violated one of the provisions of the act, specifying the provision, whereupon a warrant shall issue.

It is an established rule in the exposition of statutes that the intention of the legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together. The real intention, when ascertained, will prevail over the literal sense of terms. When words are not explicit the intention is to be collected from the context and the occasion and the necessity of the law and from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion. *Lynch* v. *Long Branch,* 111 *N. J. L.*

148; *In re Merrill,* 88 *N. J. Eq.* 261, 273. A statute often speaks as plainly by inference and by means of the purpose which underlies it, as in any other manner. *Winans* v. *Luppie,* 47 *Id.* 302; *Hoguet* v. *Wallace,* 28 *N. J. L.* 523; 25 *R. C. L.* 978. That which is clearly implied is as much a part of the law as that which is expressed. *Luria* v. *United States,* 231 *U. S.* 9; 34 *Sup. Ct.* 10; 58 *L. Ed.* 101. This statute should have a reasonable interpretation to effectuate the policy and object therein declared, or clearly implied. The provisions requiring registration of motor vehicles, and the licensing of chauffeurs and drivers, are designed to aid in the identification of each vehicle, and of those who are responsible for its movements and conduct. *Unwen* v. *State,* 73 *N. J. L.* 529; *affirmed,* 75 *Id.* 500.

The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and, in the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles, and the licensing of their drivers. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens. *Kane* v. *State,* 81 *N. J. L.* 594; *affirmed, Kane* v. *New Jersey,* 242 *U. S.* 160; 37 *Sup. Ct.* 30; 61 *L. Ed.* 222; *Hendrick* v. *Maryland,* 235 *U. S.* 610; 35 *Sup. Ct.* 140; 59 *L. Ed.* 385; *Michigan Public Utilities Commission* v. *Duke,* 266 *U. S.* 570; 45 *Sup. Ct.* 191; 69 *L. Ed.* 445. A statute enacted in the exercise of the police power must, of course, be reasonable in its terms and conditions.

The statute under consideration clearly contemplates that the police officer shall have power to arrest, or at least detain for a reasonable period of time to permit an appropriate inquiry, a non-resident driver who is unable to produce a registration certificate and driver's license. It extends the touring privilege only to the non-resident driver or chauffeur

who "has complied with the laws of his resident state with respect to the licensing of drivers or chauffeurs," and has in his possession, while operating a motor vehicle in this state, the registration certificate and his driver's license. It imposes upon the non-resident driver the obligation of establishing his identity, and his right to possess and operate the vehicle over the state's highways. These are the underlying purposes and objects the specfied provisions were designed to serve. If he is unable to satisfy this requirement of the statute, there is justification for his detention. If a resident driver were unable to produce a driver's license, the authority of the officer to arrest him could not be questioned, even though the requisite license had actually been issued. It cannot be that in the case of a non-resident driver, the officer is bound to accept without question the driver's statement that he is a resident of a state which does not require the licensing of drivers of motor vehicles, or does not attest, by the usual certificate, the granting of such a license. It may be a falsehood. The vehicle may have been stolen. The possessor may be operating it without the consent of the owner. In such event, the driver would falsify to escape the consequences of his wrong-doing. There would be a failure of justice, and thus the act, in one of its major provisions, would be frustrated. Experience has demonstrated the wisdom and absolute necessity of exercising some degree of surveilance over the users of our public highways. Considerations of public safety, as well as the duty to enforce the Motor Vehicle act as a valid legislative enactment, not only justify but require a measure of supervision and control. Of course, there should be an avoidance of arbitrary and oppressive police action. The power is one that should not be abused, but discreetly used.

A construction that would oblige the police officer, in such circumstances, to accept as verity the driver's explanation, would violate the reason and spirit of the law. It would thwart and defeat its obvious intent and policy. Police officers are not required or presumed to know the law of the several states of the Union, the District of Columbia, and the

several provinces of the Dominion of Canada (the jurisdictions embraced within the reciprocity clause of the statute), respecting the requirements for motor vehicle operators. The legislature, in the enactment of this statute, apparently assumed that all jurisdictions entitled to the reciprocity privilege required drivers' licenses, and attested their issuance in the customary manner. It does not make express provision for the drivers residing in those that do not. But its manifest object was to require identification of the driver for the purpose stated. A construction that would compel drivers residing in jurisdictions requiring licenses to identify themselves, and exempt those from jurisdictions that do not impose such requirement, or do not attest the granting of a license in the customary way, would be unreasonable. It would do violence to the legislative intent and policy. In the language of Mr. Justice Dixon: "The spirit of our laws and the indubitable reason of this enactment do not admit of such a superficial interpretation." *Winans* v. *Luppie, supra.* The certificate attesting the granting of the license is the evidence of compliance with the licensing laws of the state of the driver's residence. Its possession is presumptive evidence of the driver's authority to operate a motor vehicle in his state. Conversely, when the driver possesses no license certificate, and there is nothing to indicate compliance with the laws of his state, there is no such presumption. There is, in that situation, a *prima facie* case of lack of authority to operate such a vehicle, and, therefore, justification for his detention.

The driver must show compliance with our laws with respect to the operation of motor vehicles. He must establish his authority to drive. If he does not have the credentials prescribed by our statute, he has no valid or reasonable ground of complaint if he is required to establish his identity and authority. And it cannot be said that, in such circumstances, the non-resident driver is unreasonably and arbitrarily deprived of his liberty. Such a measure is essential for public protection, and is, therefore, a valid enactment. Of this more hereafter.

And there was justification also for the detention of respondent Pine. The Motor Vehicle act provides that no person owning, or having control or custody of, a motor vehicle registered as therein provided, shall allow such vehicle to be operated by an unlicensed driver, and prescribes a penalty for a violation of this provision. *Pamph. L.* 1931, *p.* 370. As in the case of the driver, the police officers were not obliged to assume the truth of respondent's explanation of their relation to each other, and the vehicle which they possessed. They were unable to establish in the manner prescribed by the statute, their right to possess and operate the vehicle, and there was therefore a reasonable basis for their detention. The right to operate a motor vehicle over our highways is not, in such circumstances, an absolute one. It depends upon compliance with the statute. It was the duty of the occupants of the vehicle to establish such right when called upon to do so. The detention of respondents was a mere temporary interference with their liberty, and was, under the circumstances, a proper police measure to enforce the Motor Vehicle act. It may well be that when a police officer finds in possession of a motor vehicle one who cannot establish, in the manner prescribed by the statute, his right to possess and operate it, he has reasonable grounds to believe a felony has been committed, but we find it unnecessary to pass upon that question.

The provision of the act directing that the person so apprehended without warrant shall be detained until the officer making the arrest shall make oath or affirmation that he has violated a provision of the act, necessarily implies that, in a case such as this, a reasonable time shall be allowed for investigation to determine the driver's status in his resident state, and his right to operate a motor vehicle in this state.

This statute should have a rational construction, consistent with its manifest purpose. No construction should be adopted which will substantially frustrate the objects of the act. A case not within the letter of a statute may be held to be within its meaning, because it is within the mischief for which a remedy is provided. *Hoguet* v. *Wallace, supra.*

The statute, so construed, is a reasonable exercise of the police power. The personal rights of individuals must yield to the common good and general welfare. *Levine* v. *State,* 110 *N. J. L.* 467; 166 *Atl. Rep.* 300; 2 *Cooley Const. Lim.* (*8th ed.*) 1224. Mr. Justice Holmes said: "It may be said in a general way that police power extends to all the great public needs. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank* v. *Haskell,* 219 *U. S.* 104; 31 *Sup. Ct.* 186; 55 *L. Ed.* 112.

Changing conditions necessarily impose a greater demand upon that reserve element of sovereignty called the police power, for such reasonable supervision and regulation as may be essential for the common welfare. Acceptance of restrictions upon the so-called natural rights of every individual, necessary to insure observance by the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others, is the first and most imperative obligation entering into what we call the social compact. Without it there can be no such thing as organized society or civilized government. *Des Moines* v. *Manhattan Oil Co.,* 193 *Iowa* 1096; 184 *N. W. Rep.* 823; 23 *A. L. R.* 1322. The exercise of this power for the public welfare may inconvenience individuals, increase their labor, and decrease the value of their property. Subject to the limitations imposed by the federal and state constitutions upon every power of government, it is a matter resting in the discretion of the legislature, and the courts will not interfere therewith except where the regulations adopted are arbitrary, oppressive or unreasonable. Their wisdom or expediency cannot be subjected to judicial review. 2 *Cooley Const. Lim.* (*8th ed.*) 1228.

The motor vehicle is a constant menace to public safety. The unskillful operator endangers the life and limb of the user of the public highways. It is employed by the criminal in perpetrating crimes of violence, and in effecting his escape. These salutary provisions of the statute, designed to identify

the operators of motor vehicles, and thus to promote the public safety, should be construed in the light of the object sought to be attained. The welfare of society demands the adoption of all needful measures to insure proper use of our highways. The rule invoked by respondents was designed to throw proper safeguards around the liberty of the citizen for his protection against the exercise of arbitrary power by police officers. But there was no arbitrary or oppressive exercise of power in the instant case. Police officers charged with the duty of enforcing the provisions of the Motor Vehicle act deserve protection against vexatious suits where their conduct is marked by good faith, and an honest effort is made to enforce the law. Cf. Neill v. Joyner, 89 N. C. 287.

Justification, therefore, existed for the detention of respondents. Justification, in such cases, is determined by the circumstances existing at the time of the arrest or detention, and does not depend upon the driver's right to operate a motor vehicle under the laws of his state. The proofs did not establish the cause of action pleaded, and the judgment was therefore erroneous.

Judgment reversed, and cause remanded for further proceedings in conformity with his opinion.

*For affirmance*—HETFIELD, WELLS, JJ. 2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, DEAR, DILL, JJ. 11.