225 N.J. Super. 38 (1988)
541 A.2d 719
SUZANNE M. BAUER, PLAINTIFF-APPELLANT,
v.
BOROUGH OF CLIFFSIDE PARK, POLICE DEPARTMENT OF CLIFFSIDE PARK, AND JACK MATTESSICH, A POLICE OFFICER EMPLOYED BY THE BOROUGH OF CLIFFSIDE PARK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 1988.
Decided May 18, 1988.
*39 Before Judges DEIGHAN and LANDAU.
Robert C. Damm, attorney for appellant (Lynne Van Voorhis, on the brief).
Farabaugh, Frieland, Giles & Smith, attorneys for respondents (Daniel J. Keenan, on the brief).
The opinion of the court delivered by LANDAU, J.A.D.
*40 Suzanne M. Bauer sued the Borough of Cliffside Park (Borough) the Police Department of Cliffside Park (Department) and Cliffside Park Police Officer Jack Mattessich (Mattessich) asserting claims for malicious prosecution and false arrest. Following grant of summary judgment to all defendants, Bauer appealed.
The claims arise out of Bauer's arrest without warrant in her apartment and unsuccessful prosecution for operating a motor vehicle under the influence of intoxicating liquor (N.J.S.A. 39:4-50) (hereinafter DUI) and refusal to take a breathalyzer test (N.J.S.A. 39:4-50.2, 50.4a).[1]
*41 Bauer was arrested on September 25, 1985. Following trial before the municipal judge on December 5, 1985, she was found not guilty on the DUI charge and guilty on the breathalyzer refusal charge. On appeal to the Law Division, the breathalyzer conviction was reversed because the trial judge deemed the underlying arrest invalid, absent a warrant, in that the offense did not take place in the presence of the arresting officer. The trial judge relied upon N.J.S.A. 39:5-25 which states in pertinent part:
... police officer ... may, without a warrant, arrest any person ... violating in his presence any provision of chapter 4 of this Title ... If the arrest is for a violation of R.S. 39:4-50 [DUI], the arresting officer may, if no judge, clerk or deputy clerk is available, detain the person arrested... for such reasonable time as will permit the arresting officer to obtain a warrant for the offender's *42 further detention, which temporary detention shall not exceed 24 hours from the time of the arrest ...
Bauer urges on appeal:
I. INDIVIDUAL CITIZEN PLAINTIFF MUST BE PERMITTED TO BRING TO TRIERS OF FACT A CAUSE OF ACTION FOR MALICIOUS PROSECUTION AND FALSE IMPRISONMENT INSTITUTED AS A RESPONSE TO INVALID ARREST BY POLICE SUBSEQUENTLY STRUCK DOWN BY COURT.
II. PLAINTIFF'S MUNICIPAL COURT CONVICTION SUBSEQUENTLY REVERSED ON APPEAL IS NOT PROBATIVE OF PROBABLE CAUSE BUT UNDER LIND MERELY RAISES A REBUTTABLE PRESUMPTION WHICH IN THIS CASE CANNOT BE SUSTAINED DUE TO INVALIDITY OF UNDERLYING ARREST.
III. SUMMARY JUDGEMENT SHOULD NOT HAVE BEEN GRANTED BECAUSE SUBSTANTIAL QUESTIONS OF FACT REMAIN.

FACTS
Joseph Perone, a resident of a Cliffside Park apartment building called the Cliffside Park Police Department after midnight on September 25, 1985, to report that someone struck his parked truck while attempting to park a car. Perone had heard the noise of a crash as he sat in his apartment watching television. He went to the window and saw the car which apparently struck his truck. Perone ran immediately to the street and tried to make that car stop, but the driver backed off and drove away as he "banged on the hood ..." Perone testified,
Then I went back into my apartment and called the police saying I wanted to report an accident. Then I went back out into the street, waited for the police to arrive. Meanwhile the person, she came walking up towards the apartment building. I said to her, `do you know, you just hit my car and drove away.' And I had like there was no response. She just stood there. I said, again I question, I said, `you hit my car and drove away, you know, what are you going to do about this?' And to say I'm not going to do anything about it, then she just walked into the apartment building. Then the police arrived and I explained to them what had happened and they went in and, you know, and asked her to come out.
Perone reported that Bauer was the driver of the car, that he recognized her and knew that she lived in his apartment building. After backing out of the side street, Bauer parked her car *43 and walked toward the apartment building. As she walked toward Perone, he made the following observations:
... when she came walking up towards the apartment building she was like staggering or weaving back and forth. And when I questioned her about, you know, I asked her did you hit my car, there was like a dumb look on her face. Like, you know, and then her speech was slurred. When she did answer me, she said I'm not going to do anything about it. And I wanted to know, I said, and then I asked about, you know, I just called the police, you want to wait here and she again she, her speech was slurred and she said I'm not going to do anything about it and walked into the apartment building.
On cross-examination Perone conceded that Bauer's behavior could have been caused by something other than drinking, such as a medical problem.
Perone estimated that Patrolman Jack Mattessich, a police officer employed by the Borough of Cliffside Park, arrived at the scene approximately five minutes after his phone call to the police. Perone told Mattessich "that a woman who lives in his apartment building had struck his vehicle and she refused to give him any paperwork and went into her house."
Mattessich went to Bauer's apartment, knocked on the door, and Bauer eventually opened the door. Mattessich told Bauer she had been involved in a motor vehicle accident and asked her for her license, registration and so forth. Mattessich reported that "she told me to go f-yourself, slammed the door and I had to repeatedly bang on the door again to get her to open it." After some time, Bauer again opened her door and Mattessich stepped into the apartment. He then testified as follows:
... the defendant was staggering around ranting and raving. She was cursing me. She refused to cooperate at all.
QUESTION. And what happened after that?
ANSWER. Well at that point I advised her that she was going to be placed under arrest.
QUESTION. Did she respond?
ANSWER. Just kept ranting and raving. She had to be helped to stand.
QUESTION. And what happened after that?
THE COURT: I don't understand what that means.
THE WITNESS: Well she kept stumbling, your honor, kept falling over her furniture. We had to physically hold her from falling. (Pa29-30).
*44 Concluding that Bauer was intoxicated, Mattessich placed her under arrest, transported her to police headquarters, and read her the Miranda warnings. Bauer refused to take the breathalyzer test. Mattessich then signed complaints charging her with operating a motor vehicle while under the influence of an intoxicating liquor contrary to N.J.S.A. 39:4-50, and for refusing to take a breathalyzer test contrary to N.J.S.A. 39:4-50.2.
Ironically, although Mattessich's initial effort was to secure Bauer's license, registration and insurance card which Perone had been unable to do, no summons was issued for leaving the scene of an accident in violation of N.J.S.A. 39:4-129(b) and (c) (exhibition of license and registration to person whose property was damaged).
It was undisputed that Mattessich never observed Bauer in or near her motor vehicle and thus his information respecting operation came only from Perone. Subsequently, during the course of discovery in the present action, Bauer admitted operation of her vehicle and striking the parked truck.

THE LEGAL ISSUES
The trial judge properly considered the issue of liability for malicious prosecution separately from liability for false arrest. We affirm the grant of summary judgment to all defendants on the malicious prosecution issue substantially for the reasons stated in Judge Murphy's oral opinion of June 19, 1987, concluding as we do that Bauer's arguments in this regard are without merit. R. 2:11-3(e)(1)(E).
We recognize that Bauer's claim of malicious prosecution was grounded in two prosecutions, one for DUI and the second for refusing to take the breathalyzer test. It may be urged that existence of probable cause for a DUI prosecution does not excuse prosecution for refusal to take a breathalyzer test which does not follow a lawful arrest made in conformity with N.J.S.A. 39:5-25. We note, however, that a suit for *45 malicious use of process is a cause of action disfavored in the law[2] and therefore, an even heavier burden is imposed on a plaintiff. Penwag Property Co. v. Landau, 76 N.J. 595, 597 (1978). Apart from showing initiation of the action and favorable termination, malice and absence of probable cause, the plaintiff in a civil matter must also establish a special grievance. Id. at 598.
While we agree that a finding of guilt of the motor vehicle violation of refusal to take a breathalyzer test could not be sustained because the underlying arrest was partially bottomed in out-of-presence information, that information and Mattessich's observations of Bauer demonstrate that the element of absence of probable cause was not present.
With respect to the claim of false arrest, we observe that the issue of Officer Mattessich's presence at time of operation does not arise in the context of whether probable cause for the DUI prosecution existed, because there was ample probable cause based upon Perone's oral and written statements, as augmented by the officer's personal observations of Bauer's condition.[3] However, the officer's presence was necessary during operation, in the sense that operation has now been broadly construed in the recent Mulcahy and Wright decisions of the Supreme Court (State v. Mulcahy, 107 N.J. 467 (1987); State v. Wright, 107 N.J. 488 (1987)), in order to permit him to arrest without warrant for a violation under chapters three and four of the Motor Vehicle and Traffic Laws. N.J.S.A. 39:5-25. This interpretation is consistent with our common law. See, e.g., *46 State v. Morse, 54 N.J. 32 (1969). The only significant exception to the warrant requirement in an arrest for a nonindictable offense not committed in the presence of the arresting officer is if the commission has been admitted. State in Interest of J.B., Jr., 131 N.J. Super. 6, 13-16 (Cty.Ct. 1974). See also, State v. Mulcahy, supra, 107 N.J. at 475-476; State v. Smith, 37 N.J. 481, 495 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963). To the extent that In re Emberton, 109 N.J. Super. 211 (App.Div. 1970) and State v. Hanemann, 180 N.J. Super. 544 (App.Div. 1981), certif. den. 88 N.J. 506 (1981), may be read to have adopted the probable cause or reasonable basis standard applicable to indictable offenses as a proper standard for warrantless arrests in out-of-presence motor vehicle violations, our examination of those opinions suggests that the "presence" requirement of N.J.S.A. 39:5-25 and its common law forebears was neither raised nor considered. They do not change the state of the law as reviewed by Judge Brody in State in Interest of J.B., Jr., supra, 131 N.J. Super. at 13, and confirmed in Mulcahy.
The question emphasized in State v. Mulcahy is what the arresting officer observed by the use of his own senses and whether that observed conduct connoted operation. In order to arrest a driver and require that he submit to a breathalyzer test, the officer's own senses must afford probable cause to believe that operation by the defendant, in the Mulcahy-Wright sense, has occurred or is about to occur.
In this case, no version of the proofs would tend to show that the officer based his assessment of probable cause for arrest upon any evidence of operation other than Perone's statements.
Bauer's admission that she operated the vehicle did not come until this civil suit started, although her apparent inebriation was physically observed by Mattessich. When considering the language of N.J.S.A. 39:4-50.4a, the Mulcahy majority opinion did not differ with Justice Clifford's statement in dissent (107 N.J. at 487) that the element of the refusal statute which *47 requires that refusal occur after an arrest for drunk driving refers to a legal arrest. The arrest in this instance did not conform with N.J.S.A. 39:5-25 or common law.
The basis for a claim of false arrest arises at the time the incident occurs, i.e., the time of arrest. Pisano v. City of Union City, 198 N.J. Super. 588, 591 (Law Div. 1984). Subsequent events cannot legalize an act illegal when performed. Even probable cause does not constitute a defense unless it serves to validate the arrest. Prosser and Keeton On Torts, § 11, at 53 (5th Ed. 1984). Here, because of the language of N.J.S.A. 39:5-25, the arrest cannot be validated by the presence of probable cause, even though the charge of DUI may be supported by that probable cause. Similarly, absence of ill will or any desire to injure Bauer does not serve as a defense, although all of these factors should be applicable to the issue of damages. See, Prosser and Keeton, supra, § 11, at 53. Moreover, the false arrest claim can refer only to the arrest for operation under the influence, as the refusal occurred after arrest.
Thus, we must decide whether Bauer should be provided with a remedy to recover for a "false arrest" which was not permitted under N.J.S.A. 39:5-25, even though there was probable cause to believe there had been operation under the influence. The problem is somewhat complicated by Bauer's recent admission of operation, which, together with Mattessich's observation of her apparent intoxication shortly after the incident, would have provided a sound basis for the arrest.
Is the remedy afforded by law for a false arrest primarily to recognize that the arrested person was the victim of a wrong and to compensate her therefor, or is the remedy primarily afforded for the benefit of the public to discourage false arrests? The false arrest cases typically deal with situations where there was not probable cause for the arrest. Here, there was such probable cause. Moreover, the missing element of operation needed to sustain a warrantless arrest has now been *48 provided by Bauer. Another factor to be considered is that State v. Tischio, 107 N.J. 504 (1987) app. dism. ___ U.S. ___, 108 S.Ct. 483, 98 L.Ed.2d 482 (1987), requires that a prompt breathalyzer test be performed, because of its disapproval of extrapolation evidence. Unquestionably, Mattessich must have been aware that Bauer's inculpatory state of inebriation, if such it was, would have been altered by passage of time. We have, however, been favored with nothing to indicate whether any attempt was made to secure a warrant, and, if so, how long that might have taken.
Yet another consideration in weighing the remedy issue is the probable influence of, and reliance placed by authorities upon, the Emberton and Hanemann cases referred to above. Hanemann was relied on by the municipal judge. These decisions certainly must have appeared to lend support to the arrest procedure utilized in this case, because of the existence of probable cause.
We conclude that although there was an improper arrest, in the circumstances here present no sound interest would be served by affording a significant financial reward to Bauer for deferring acknowledgement of vehicle operation until the motor vehicle actions were concluded. As to the public interest, often considered in affording a tort remedy, the Law Division's reversal of Bauer's Municipal Court finding of guilt under N.J.S.A. 39:4-50.4a offers sufficient incentive to the defendants to correct future procedures.
Consequently, with respect to the claims of false arrest made against the several defendants, we reverse the grant of summary judgment, but hold that damages suffered by Bauer are as a matter of law and public policy, necessarily nominal. We would be inclined therefore to enter judgment for plaintiff on this claim for six cents and court costs to avoid the expense of remand. Accord, Mason v. Wrightson, 205 Md. 481, 109 A.2d 128 (Ct.App. 1954). However, we note that the defenses of expiration of time under Title 59 which were pleaded by the *49 municipal defendants were not explored on the motions for summary judgment. Thus, possible expiration of Title 59 limitation periods remains as a defense in the case, at least for the Borough and the Police Department.
Accordingly, we must remand for proceedings consistent herewith on the false arrest claims.
NOTES
[1] N.J.S.A. 39:4-50.2 states:

(a) Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4-50.
(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.
(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.
(e) No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant. The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with section 2 of this amendatory and supplementary act. A standard statement, prepared by the director, shall be read by the police officer to the person under arrest.
As incorporated by subsection (e), N.J.S.A. 39:4-50.4a contains the penalty provisions under this act. It provides:
The municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test provided for in section 2 of P.L. 1966, c. 142 (C. 39:4-50.2) when requested to do so, for 6 months unless the refusal was in connection with a subsequent offense under this section, in which case the revocation period shall be for 2 years.
The municipal court shall determine by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence of intoxicating liquor or a narcotic, hallucinogenic, or habit-producing drug or marihuana, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer, and if these elements of the violation are not established, no conviction shall issue. In addition to any other requirements provided by law, a person whose operator's license is revoked for refusing to submit to a chemical test shall satisfy the requirements of a program of alcohol education or rehabilitation pursuant to the provisions of R.S. 39:4-50. The revocation shall be independent of any revocation imposed by virtue of a conviction under the provisions of R.S. 39:4-50.
In addition to issuing a revocation, the municipal court shall fine a person convicted under this section, a fine of not less than $250.00 nor more than $500.00.
Thus, both N.J.S.A. 39:4-50.2 and N.J.S.A. 39:4-50.4a are necessarily implicated when considering an allegation of refusal to submit to a breathalyzer test, after being arrested.
[2] Refusal to submit to breathalyzer test is a civil offense, to which a preponderance standard of proof is applicable. State v. Grant, 196 N.J. Super. 470 (App. Div. 1984). Accordingly, when discussing the claim for "malicious prosecution" of the refusal charge, we have referred to the claim as one for malicious use of process.
[3] As a matter of law, a person of ordinary prudence would have had reasonable grounds to believe the truth of the charge when made. See, Lind v. Schmid, 67 N.J. 255, 263 (1975).