748 A.2d 1130 (2000)
330 N.J. Super. 10
Kenneth MESGLESKI and Linda Mesgleski, Defendants-Appellants,
v.
Peter J. ORABONI and the New Jersey Society for the Prevention of Cruelty to Animals, Ocean County Branch, Plaintiffs-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 6, 2000.
Decided April 3, 2000.
*1132 Shebell & Shebell, Oakhurst, for defendants-appellants (Thomas F. Shebell, III, of counsel; Christopher B. Leitner, Ocean, on the brief).
Boglioli & Mirra, West Long Beach, for plaintiffs-respondents (Richard J. Mirra, on the brief).
Before Judges PETRELLA and BRAITHWAITE.
*1131 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs Kenneth and Linda Mesgleski appeal from a Law Division order granting summary judgment in favor of defendants Peter J. Oraboni and the New Jersey Society for the Prevention of Cruelty to Animals-Ocean County Branch (SPCA). On their appeal, plaintiffs argue that the motion judge erred in determining that the SPCA is a public entity under the Tort Claims Act, N.J.S.A. 59:1-1 et seq. (the Act). They assert that Oraboni violated Kenneth Mesgleski's civil rights;[1] he had no legal right to enter plaintiffs' home; the issue of trespass should be decided by a jury; Oraboni should be considered a state actor utilizing the color and authority of law as to the claimed torts and civil rights violations; and even if the SPCA were a public entity, Oraboni's acts are not covered by the Act.
On December 8, 1994, Linda Mesgleski brought a puppy into the New Jersey Animal Control Center in Bricktown that had been beaten by her husband, Kenneth, to prevent the dog from being shot by him. An investigation was undertaken by Oraboni, a captain in the SPCA, who concluded that a summons should issue to Mesgleski.
Oraboni went to Mesgleski's home in Brick Township to serve the summons on December 13. When Mesgleski opened the door, Oraboni identified himself and said he was there regarding an animal cruelty complaint. To prevent Mesgleski from shutting the door he placed his right foot and knee in the door's threshold. Mesgleski demanded that Oraboni leave, told his wife to call the police, and flung the door shut, striking Oraboni's right knee and hand. The door then bounced back and hit Mesgleski in the right knee and shoulder. Oraboni then told Mesgleski he was under arrest and stepped a little way inside the house to wait for the Brick Township police. When the police arrived, Oraboni told them he wanted Mesgleski arrested and that he would sign a complaint, which he subsequently did at police headquarters, charging Mesgleski with assaulting him and with cruelty to an animal. Mesgleski signed a cross-complaint for assault. The assault complaints were subsequently withdrawn by the parties in the municipal court and Mesgleski pled guilty "with a reservation" to the charge of cruelty to an animal.
By a certified mail letter of January 25, 1995, plaintiffs' attorney gave notice to the SPCA "pursuant to Title 59 of the New Jersey State Statutes Annotated that Mr. *1133 Mesgleski is making a claim against the New Jersey Society for the Prevention of Cruelty to Animals as a result of an assault and illegal, unlawful and improper arrest by Captain Oraboni" on December 13, 1994. A six count civil complaint was filed by plaintiffs on August 21, 1995, and included claims by Mesgleski for personal injuries to his right knee and shoulder and emotional distress.[2]
On the trial date, plaintiffs sought a directed verdict for violation of their civil rights and a ruling limiting evidence regarding cruelty to an animal, thus causing a trial delay. The requests were scheduled for subsequent argument and defendants cross-moved for dismissal of the complaint or summary judgment. After arguments on the applications, the motion judge denied plaintiffs' requests for a directed verdict and to preclude use of evidence at trial of Mesgleski's acts of cruelty to his dog. The SPCA was held to be a "public entity" and Oraboni a "public employee" entitled to the substantive immunities, defenses and restrictions of the Act. A July 17, 1998 order reflected the rulings and the grant of defendants' motion. Plaintiffs' claims of violation of their federal civil rights were dismissed as were their claims for false arrest and related civil rights violations.
In addition, all claims against the defendants with respect to allegations of failure to comply with statutes and rules regarding arrest procedure and related civil rights claims were dismissed. Finally, the order dismissed plaintiffs' civil rights claims predicated on an allegation that Oraboni failed to advise Mesgleski of his Miranda[3] rights. Plaintiffs' motion for leave to appeal the order was denied.
Subsequently, defendants moved for summary judgment on the remaining claims. Because plaintiffs conceded they could not meet the tort damages threshold requirements of the Act, the motion was granted and the complaint dismissed in its entirety.

I.
Plaintiffs argue there was no intent by the Legislature to qualify the SPCA as a public entity for Title 59 protection. They argue that although N.J.S.A. 4:22-1 authorizes the incorporation of the SPCA, it does not establish the SPCA or make it a state agency or entity, and hence it should not be within the ambit of the Act governing public entities and the SPCA and its employees should be civilly liable for plaintiffs' damages.
The SPCA is incorporated under N.J.S.A. 4:22-1, which provides:
The corporation under the name of "the New Jersey Society for the Prevention of Cruelty to Animals", created for the purpose of the enforcement of all laws enacted for the protection of dumb animals, by the act entitled "An act to incorporate the New Jersey society for the prevention of cruelty to animals,"... is hereby continued.
Public entities are immune from liability for personal injuries, except under the conditions and circumstances detailed in the Act. Schwarz v. Port Authority Transit Corp. Div. of Delaware Port Auth., 305 N.J.Super. 581, 593, 702 A.2d 1351 (App.Div.1997), certif. denied, 153 N.J. 214, 708 A.2d 65 (1998). The Act provides in N.J.S.A. 59:1-2:
[I]t is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence *1134 within the limitations of this Act and in accordance with the fair and uniform principles established herein. All of the provisions of this Act should be construed with a view to carry out the above legislative declaration.
The Act also directs in N.J.S.A. 59:2-1(a):
Except as otherwise provided by this Act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
The legislative goal of the Act is "to re-establish immunity for all governmental bodies within its definition of `public entity.' Immunity is all-inclusive within that definition except as otherwise provided by the Act." English v. Newark Housing Auth., 138 N.J.Super. 425, 428-429, 351 A.2d 368 (App.Div.1976).
N.J.S.A. 59:1-3 defines "public entity" as:
"Public entity" includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State. `State' shall mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued. (Emphasis supplied).
The Comment to this section states that "[t]he definition of `Public Entity' provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions." (emphasis added).
A definition of "public entity" was quoted with approval in English, supra, as follows:
The two definitions, `Public entity' and `State' should be viewed as follows: The former is a greater inclusive grouping based on sovereignty, i.e. political subdivisions; the second is a lesser included grouping based on administrative subdivisions of the State. `State' then is but one of the public entities listed in the former definition. `Public entity' is the general term. `State' is a specific. Each of the parts included under the term `Public entity' has had that sovereignty possessed by the State parcelled out to it, and is to that degree independent of the State, and the equal of the State. The administrative parts that are listed in the meaning of `State', however, merely share in or are covered by the umbrella of sovereignty which the State has retained, but have no sovereignty of their own. These include offices, departments, divisions, bureaus, boards, commissions and state agencies. The exclusion of [entities] `statutorily authorized to sue and be sued' is only contained in the latter definition, that of `State.'
[English, supra, 138 N.J.Super. at 429-430, 351 A.2d 368 (quoting Wade v. New Jersey Turnpike Auth., 132 N.J.Super. 92, 96, 332 A.2d 232 (Law Div.1975)).]
English concluded that the housing authority was clearly a public entity and not a subordinate branch of the governing body. "It is a unique separate entity, possessing and enjoying many governmental powers and privileges." Id. at 430, 351 A.2d 368. Using similar reasoning, the trial court concluded that the SPCA is a separate entity that possesses some governmental powers and privileges, i.e. the power to enforce all laws made to protect "dumb animals."
Plaintiffs argue that although the SPCA is given some statutory authority to assist the State in enforcing animal protection laws, the SPCA does not perform "essential government functions" and is a separate entity with its own agenda and functions. Plaintiffs further assert that the SPCA is neither controlled or managed by the State, nor granted exclusive authority over essentially public functions because police departments and certain animal *1135 control officers also enforce animal protection laws.
Under N.J.S.A. 4:22-3, the SPCA is given a number of general powers. They include the power to:

* * *
d. Enforce all laws or ordinances enacted for the protection of dumb animals;

* * *
f. Adopt a common badge which shall be authority for making arrests;
g. Sue and be sued in all courts; and all actions brought by or against the society shall be in its corporate name;
The SPCA is given certain police powers under N.J.S.A. 4:22-44:
Any member, officer or agent of the New Jersey Society for the Prevention of Cruelty to Animals, or any sheriff, undersheriff, constable, certified animal control officer who has been properly authorized pursuant to section 4 of P.L. 1983, c. 525 (C.4:19-15.16b) or police officer may:
a. Make arrests for violations of this article;
b. Arrest without warrant any person found violating the provisions of this article in the presence of such member, officer, agent, sheriff, undersheriff, constable, police officer or a certified animal control officer who has been properly authorized pursuant to section 4 of P.L. 1983, c. 525 (C.4:19-15.16b), and take such person before the nearest judge or magistrate as provided in this article.
Defendants rely on the statutory grant of the power to "sue and be sued" (N.J.S.A. 4:22-3(g)) as an essential attribute of a public entity under the Act. The SPCA's agents exercise law enforcement powers (N.J.S.A. 4:22-3, 4, 43-52), are authorized to carry guns (2C:39-6c(7)), to wear a badge (4:22-3(f)), and are authorized to incorporate by statute (4:22-4), all indicia of a "public entity." The SPCA is a "public body" within the meaning of that phrase in N.J.S.A. 59:1-3 because it has police powers to enforce "all laws enacted for the protection of dumb animals." N.J.S.A. 4:22-1; Hanna v. New Jersey Soc. for Prevention of Cruelty To Animals, 63 N.J.L. 303, 43 A. 886 (E. & A. 1899). As a public body, the SPCA would be included within the Act unless explicitly excluded. Hanna observed that no "special powers or duties with regard to the prevention of cruelty" are conferred upon the societies or agents by the statutes authorizing incorporation (id. at 304, 43 A. 886), even though those statutes declare its purpose as "enforcement of all laws which are now or may hereafter be enacted for the protection of dumb animals." However, Hanna cited other statutes which did confer specific duties and powers on the SPCA and its agents. Ibid.
Because the SPCA has the responsibility to enforce laws under State statutory authorization, it acts as an arm of the State. While the SPCA's authority and duties are not exclusive, and are shared with police departments and certified animal control officers, no other public entities have its duties. Shared duties do not inhibit its public entity status since it is common for police departments, with their generalized police powers, to share duties with many other public entities, such as firefighters and emergency medical technicians, without abridging those entities' powers. N.J.S.A. 4:22-45 provides where an arrest has been made for cruelty to animals by a non-SPCA officer, the arresting person must give notice to the state or district SPCA so it can take charge of the case and prosecute it. This further delegation of State authority supports the conclusion that the SPCA is a public entity. The extent of these enforcement powers supports a finding that the SPCA is a public entity.
Although the organizational bylaws of the SPCA indicate that its Board of Directors is responsible for the decision-making, *1136 it is at least in part funded through State statutes. For example, N.J.S.A. 4:22-55 provides:
Except as provided pursuant to subsection b. of this section, all fines, penalties and moneys imposed and collected under the provisions of this article, shall be paid by the court ... to the district (county) society for the prevention of cruelty to animals ... to be used by the society in aid of the benevolent objects for which it was incorporated.
However, under N.J.S.A. 4:22-56,"[4] where fines may be shared between a municipality or the SPCA, neither a municipality or its certified animal control officer on the one hand, nor the SPCA or its agents on the other, share joint liability when acting independently.
Plaintiffs mistakenly argue that where the words "corporation" and "society" appear in statutes they refer only to entities other than "public entities." They assert that societies, such as the SPCA, are not dependent on statutory incorporation for their existence.
A variety of organizations with separate status have been deemed public entities for purposes of the Act. Thus, the University of Medicine and Dentistry of New Jersey, "a body corporate and politic" (N.J.S.A. 18A:64G-3), is a public entity and within the ambit of the notice requirements of the Act. Fuchilla v. Layman, 109 N.J. 319, 330-331, 537 A.2d 652, cert. denied, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). The New Jersey Turnpike Authority is also a public entity within the Act. S.E.W. Friel Co. v. New Jersey Turnpike Auth., 73 N.J. 107, 373 A.2d 364 (1977). "[W]here the Legislature intends to have a public entity, such as the Authority, treated as a private corporation, it has so provided." Matter of New Jersey Turnpike Auth., 292 N.J.Super. 174, 181, 678 A.2d 726 (App.Div.), certif. denied, 147 N.J. 260, 686 A.2d 761 (1996); (citing Lieberman v. Port Authority, 132 N.J. 76, 83-84, 622 A.2d 1295 (1993)).
Other cases provide insight into the expansiveness of the phrase "public entity." In Benjamin v. Corcoran, 268 N.J.Super. 517, 634 A.2d 108 (App.Div.1993), we concluded that the New Jersey Firemen's Home board of managers constituted a public entity in a suit against the Home for injuries a child suffered when bitten by a dog while sledding on the premises. We said:
The New Jersey Firemen's Home statute, N.J.S.A. 30:7-1 to -12, specifically designates the N.J.F.H.'s board of managers as an "agency within the State Department of Institutions." N.J.S.A. 30:7-1. The N.J.F.H. is not declared by the Legislature to be a "body politic" with an "essential governmental function." However, this statute is older than the contrasting statutes. The Legislature clearly expressed its intent that the N.J.F.H. be controlled, managed and governed by the board of managers as agents of the State.... The board of managers, by law, totally controls every aspect of the ownership and operation of the N.J.F.H. Therefore, even if the N.J.F.H. were found to be a distinct corporate body, as apparently is revealed through answers to interrogatories, the N.J.F.H. would still constitute a public entity, as there is no area left beyond the statutory powers of the board of managers for independent operation of the N.J.F.H.
[Id. at 524, 634 A.2d 108 (emphasis added).]
The plaintiffs in Benjamin argued that since the Firemen's Home was "statutorily authorized to sue and be sued" it was not a public entity under the Act. We disagreed and, citing "the definition of "state" in N.J.S.A. 59:1-3," held that the Firemen's Home, as a not-for-profit corporation, is *1137 not precluded from designation as a public entity under the Act.
Snyder v. American Ass'n of Blood Banks, 144 N.J. 269, 304, 676 A.2d 1036 (1996), rejected the argument, raised for the first time on appeal in that case only by the amicus, the American Society of Association Executives, that the American Association of Blood Banks (AABB) should be immune from tort liability under the Act as a "public entity." The Court concluded that the definition of "public entity" in the Act did not apply to the AABB because
the Legislature did not create or authorize the AABB to perform a specific governmental purpose. Nor did the AABB act under contract with or at the direction of a public entity. The AABB is a private, tax-exempt association created to meet the needs of the blood-banking industry. Merely because it has assumed regulatory authority over that industry does not transform the AABB into a public entity entitled to immunity under the Tort Claims Act.

[Id. at 304-305, 676 A.2d 1036.]
The status of the SPCA is readily distinguishable from that of the AABB. Snyder pointed out that the Legislature did not authorize the AABB to perform a "specific governmental purpose." In the case of the SPCA, however, the Legislature gave it the authority to enforce laws to protect "dumb animals." Thus, the statutory delegation of such power to the SPCA supports the finding that the SPCA is a public entity.
Plaintiffs' challenge to the motion judge's reliance on State v. Vickery, 275 N.J.Super. 648, 646 A.2d 1159 (Law Div. 1994), as support for a public entity conclusion, arguing that the judge did not distinguish between "state actors" for purposes of the "state action doctrine" and "public entities" for purposes of Title 59, is unavailing. The state SPCA official in Vickery prosecuted for "Official Misconduct" under N.J.S.A. 2C:30-2(a)[5] fraudulently used his title to solicit donations of pet food. In concluding that a member of the SPCA is a "public servant" for the purposes of the Official Misconduct statute (id. at 655), Vickery noted the delegation of governmental power to the SPCA:
Unlike most charitable organizations, the role of the S.P.C.A. is formally acknowledged and established by statute. N.J.S.A. 4:22-1 authorizes the incorporation of the S.P.C.A. and empowers it to enforce all laws enacted "for the protection of dumb animals." N.J.S.A. 4:22-4 provides for assistance to the S.P.C.A. by other government agencies, such as police forces, in carrying out these duties. Examination of some of the specific powers granted to the S.P.C.A. makes clear that it performs a government function. In the course of their duty to enforce the law, S.P.C.A. members may make arrests and apply for warrants. N.J.S.A. 4:22-44(a) authorizes members of the S.P.C.A. to make arrests for violations of the laws protecting animals. Subsection (b) provides that if a violation of the law occurs *1138 in the presence of an S.P.C.A. member, he or she may make an arrest without a warrant, and bring the perpetrator before the nearest judge or magistrate. While subsection (a) does not say so explicitly, the clear inference is that it refers to arrests made pursuant to a warrant. N.J.S.A. 4:22-50.1 reenforces this presumption. It provides for appointing a receiver for animal shelters when their owners or operators are arrested for violations of the law by an agent of the S.P.C.A., "or when the warrant is issued for the arrest."
[Id. at 651-652, 646 A.2d 1159 (footnotes omitted).]
Moreover, Vickery noted other privileges that SPCA agents enjoy which private citizens do not, namely, entering buildings where violations take place to make arrests, carrying weapons and wearing a badge. Thus, Vickery concluded: "that the statutes grant this authority to S.P.C.A. members together with police and other law enforcement personnel demonstrates their status as public servants" and the SPCA as a public entity.[6]
We agree with the reasoning of Vickery. By implication, an official of the SPCA being subject to criminal liability for official misconduct of necessity requires a status involving applicability of the benefits, immunities and limitations of the Act. Thus, we conclude that the SPCA is a public entity for purposes of the Act.

II.
Plaintiffs argue that the false arrest claim was wrongly dismissed. The judge found that probable cause negated the false arrest. Plaintiffs claim there was a false arrest because an arrest can occur without a warrant only when the offense is committed in the presence of the person, and here Oraboni purported to arrest Mesgleski for an earlier cruelty to an animal offense, rather than for an offense committed in his presence that would have justified the arrest.
Defendants argued that in reality the police arrested Mesgleski. They also contend that the element of probable cause arising from the direct assault upon Oraboni negated the need for a warrant under the circumstances, and thus there was no false arrest.
A basis for a suit for false arrest arises where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to process that is void. Fair Oaks Hosp. v. Pocrass, 266 N.J.Super. 140, 153, 628 A.2d 829 (Law Div.1993). False arrest, or false imprisonment, is the constraint of the person without legal justification. Pine v. Okzewski, 112 N.J.L. 429, 431, 170 A. 825 (E. & A.1934). The tort requires an arrest or detention of the person against his or her will; and lack of proper legal authority or "legal justification." Barletta v. Golden Nugget Hotel Casino, 580 F.Supp. 614, 617 (D.N.J.1984).
Whether probable cause exists in a given case is essentially a decision for the trial judge who must balance the individual's interest in "being free from police interference" and society's interest in "effective law enforcement." State v. Dilley, 49 N.J. 460, 468, 231 A.2d 353 (1967); Pantalone v. Bally's Park Place Casino Hotel, 228 N.J.Super. 121, 127, 549 A.2d 55 (App.Div.1988). The existence of probable cause is a defense to false arrest if it *1139 serves to validate the arrest. Bauer v. Borough of Cliffside Park, 225 N.J.Super. 38, 47, 541 A.2d 719 (App.Div.), certif. denied, 113 N.J. 330, 550 A.2d 447 (1988).
The Act does not immunize law enforcement officials from charges of false arrest or false imprisonment. N.J.S.A. 59:3-3; Pisano v. City of Union City, 198 N.J.Super. 588, 590, 487 A.2d 1296 (Law Div.1984). A plaintiff need not prove the lack of probable cause, but the existence of probable cause will nevertheless defeat the action. See Hayes v. Mercer County, 217 N.J.Super. 614, 623, 526 A.2d 737 (App.Div.), certif. denied, 108 N.J. 643, 532 A.2d 226 (1987). The probable cause needed to defend a false arrest action uses the objective standard of a reasonable and prudent person in like circumstances. Ibid.; Henry v. Shopper's World, 200 N.J.Super. 14, 18, 490 A.2d 320 (App.Div. 1985).
"To prevail on a motion for summary judgment, a public employee need not establish his subjective, i.e., actual, good faith if his conduct was objectively reasonable." Brayshaw v. Gelber, 232 N.J.Super. 99, 110, 556 A.2d 788 (App.Div. 1989). Moreover, a public employee can use subjective good faith as a second line of defense at trial, regardless of whether he or she was acting reasonably. Ibid.; Hayes, supra (217 N.J.Super. at 622, 526 A.2d 737).
As to civil rights claims, 42 U.S.C.A. § 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
A plaintiff asserting a § 1983 claim must show that a defendant "acted under color of state law," thereby depriving plaintiff of a clearly held federal constitutional or statutory right. Wildoner v. Borough of Ramsey, 162 N.J. 375, 744 A.2d 1146 (2000).
Under Section 1983, even if probable cause does not exist in fact, defendants may be entitled to assert a defense of qualified immunity if they reasonably believed that probable cause existed. The Supreme Court set forth the defense of qualified (or good-faith) immunity and its purpose as follows:
... We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.
[Ibid. (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (citations and footnote omitted).]
In Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988), New Jersey adopted Harlow's "objective reasonableness" standard for determining whether law enforcement officials are entitled to the qualified immunity defense in § 1983 actions. Kirk held that such an official can defend a § 1983 claim by demonstrating either that he or she acted with probable cause, or that a reasonable law enforcement officer could have believed there was probable cause. Id. at 184, 536 A.2d 229. Kirk also recognized that the United States Supreme Court "has interpreted Section 1983 to limit the rights of plaintiffs and to encourage disposition of the actions as a matter of law, at least when these actions arise out of an alleged unlawful arrest, search, or seizure by a law enforcement *1140 officer." Id. at 179, 536 A.2d 229; Wildoner v. Borough of Ramsey, supra (162 N.J. at 375, 744 A.2d 1146).
Probable cause relies on the facts of the individual case and "is more than mere suspicion, but less than legal evidence necessary to convict." State v. Mark, 46 N.J. 262, 271, 216 A.2d 377 (1966). See also State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972); State v. Kasabucki, 52 N.J. 110, 116, 244 A.2d 101 (1968); and State v. Burnett, 42 N.J. 377, 387, 201 A.2d 39 (1964).
To the extent plaintiff's arrest was based upon only the cruelty to animals offense, Oraboni would not meet his burden of proving a valid arrest because he lacked a warrant and the offense was not committed in his presence. See Bauer v. Borough of Cliffside Park, supra (225 N.J.Super. at 46, 541 A.2d 719); New Jersey Society for Prevention of Cruelty to Animals v. Rosen, 82 N.J.L. 130, 81 A. 496 (1911) (violation must occur in the presence of any member, officer, or agent of the SPCA for an arrest without a warrant). The only significant exception to the warrant requirement for an arrest for a nonindictable offense committed outside the presence of the arresting officer is where the offense has been admitted. State in Interest of J.B., 131 N.J.Super. 6, 13-16, 328 A.2d 46 (Cty.Ct.1974); see also State v. Mulcahy, 107 N.J. 467, 527 A.2d 368 (1987); State v. Smith, 37 N.J. 481, 495, 181 A.2d 761 (1962), cert. denied, 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963).
However, the motion judge here found that Mesgleski's arrest and subsequent detention were supported by probable cause and that no constitutional violation occurred. The judge found that a crime had been committed, an assault, in the presence of and on Oraboni and that defendant did not have to get an impartial magistrate to issue a warrant to arrest plaintiff.
Applying the objective good faith standard of Hayes, Oraboni adequately established that he acted in an "objectively reasonable" manner in performing his duties. Therefore, he is entitled to a qualified immunity under N.J.S.A. 59:3-3. The motion judge found that Oraboni arrested plaintiff for an offense that occurred in his presence, abrogating the need for a warrant. There was no false arrest because there was proper legal authority or legal justification for the arrest.

III.
Plaintiffs argue that the SPCA as a private entity has a sufficiently close relationship with the State to be considered a state actor, thus invoking the state action doctrine and allowing Constitutional and civil rights violations to be charged against the SPCA for the trespass.
Defendants claim that plaintiffs' trespass arguments lack merit because Oraboni was on the premises to serve a summons, his foot only intruded a few inches into the doorway and a simple trespass is not a violation of a constitutional or federal statutory right. Defendants also claim that plaintiffs' trespass claims should be deemed abandoned because there was no discovery on the civil rights claims; plaintiffs appealed the order of July 17, 1998 without reference to the trespass claims; and plaintiffs never referred to these claims before the summary judgment motion.
The cases defendants cite as support for abandonment of the claim are those that invoke estoppel. Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 512, 655 A.2d 1368 (1995). That case observes that discovery rules were created to eliminate "concealment and disguise" and that violations of the rules require sanctions. Cunningham v. Rummel, 223 N.J.Super. 15, 18-19, 537 A.2d 1314 (App. Div.1988), iterates that discovery rules must be adhered to; if they are not, dismissal or striking of pleadings or parts thereof, or other sanctions within the discretion *1141 of the court, may occur. However, defendants cite no discovery violation. There is insufficient basis for a claim of abandonment.
More significantly, there was no actionable trespass because Oraboni was lawfully on the premises to serve a summons. Trespass is "an unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another." State v. Besson, 110 N.J.Super. 528, 538, 266 A.2d 175 (Law Div.1970) (quoting Black's Law Dictionary (4th ed.), at 1674). Thus, there being no factual dispute the judge properly dismissed the trespass and related claims.

IV.
Our conclusion that the SPCA is a public entity renders moot plaintiffs' alternative argument that while the SPCA is not a public entity, it is a state actor and thus subject to constitutional liability.

V.
As a further alternative argument in support of their civil rights claims, plaintiffs argue that even if the SPCA is a public entity, it is not an alter ego of the State and is therefore liable as a "person" for § 1983 violations, citing Fuchilla v. Layman, supra, 109 N.J. at 330, 537 A.2d 652. Plaintiffs also argue that Oraboni's actions fall within an exception to the Act because public employees are not exempt from liability for false arrest, N.J.S.A. 59:3-3, and because municipalities are not immune from civil rights violations suits under the New Jersey Constitution, citing Wallace v. City of Atlantic City, 257 N.J.Super. 404, 608 A.2d 480 (Law Div. 1992), and Abbamont v. Piscataway Bd. of Educ., 138 N.J. 405, 427-433, 650 A.2d 958 (1994).
Fuchilla v. Layman, supra, 109 N.J. at 330, 537 A.2d 652 applied various factors in determining that the University of Medicine and Dentistry of New Jersey (UMDNJ), while a public entity, was not an "alter ego" of the State under the eleventh amendment and thus could be sued as a "person" under § 1983 for gender discrimination, regardless of the Act. In Wallace v. City of Atlantic City, supra, 257 N.J.Super. at 410, 608 A.2d 480, the court held that a municipality was not immune under the Act for State and federal Constitutional violations, and was liable for a "taking" of property damaged in a police raid. In Abbamont v. Piscataway Bd. of Educ., supra, 138 N.J. at 430, 650 A.2d 958, an evenly divided Court upheld punitive damages against a board of education under the Conscientious Employees Protection Act, notwithstanding the Tort Claims Act's prohibition of punitive damages against a public entity.
Regardless of these cases, plaintiffs' false arrest claims fail. Because plaintiffs have not established any false arrest, trespass, or other compensable claim, the civil rights claims are unsustainable. The cases noted involve instances where a public entity was found to have violated the rights of an individual. That is not the case here.
Affirmed.
NOTES
[1] References to plaintiff or Mesgleski in the singular refer to Kenneth Mesgleski.
[2] Count one of the complaint against defendants asserted a negligence claim; count two asserted an assault claim; count three asserted a reckless injury claim; count four asserted an improper training and supervision claim against the SPCA; count five asserted claims of invasion of privacy, trespass and civil rights violations; and count six asserted a per quod claim on behalf of Linda Mesgleski.
[3] Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).
[4] This provision became effective December 8, 1997, a date subsequent to the filing of this action in August 1995.
[5] N.J.S.A. 2C:30-2(a) provides:

A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner.
The "Official Misconduct" statute (N.J.S.A. 2C:27-1(g)), provides in pertinent part:
Public servant means any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function, but the term does not include witnesses.
[6] The only other reported case we have found concluding that the SPCA is a public entity is a Louisiana case, Serpas v. Margiotta, 59 So.2d 492 (La.App.1952), which held:

The statute and ordinance merely delegate to the S.P.C.A. the governmental power of the State and City to safeguard the health and welfare of its citizens by clearing the streets of vicious or potentially vicious animals. Thus, the S.P.C.A., having been delegated this duty by the State and City, acts as an agency of the State and City in the performance of the duty, and its agent and employee acts as a public official performing a public duty. Under such circumstances, it seems well settled that there is no liability to individuals for a breach of such duty.
[Id. at 496 (emphasis added).]