**Nasir FINNEMEN, Plaintiff,**

v.

**SEPTA, et. al., Defendants.**

**CIVIL ACTION NO. 15–1654**

United States District Court,
E.D. Pennsylvania.

July 25, 2017

Reginald C. Allen, Philadelphia, PA, for Plaintiff.

Amy C. Lachowicz, Daniel J. McGravey, Lauri A. Kavulich, Clark Hill PLC, Jonathan Cooper, Philadelphia Law Department, Philadelphia, PA, for Defendants.

## MEMORANDUM

### EDUARDO C. ROBRENO, J.

This civil rights action arises out of Plaintiff Nasir Finnemen's[1] arrest at a Southeastern Pennsylvania Transportation Authority ("SEPTA") station, and subsequent prosecution. The named defendants—who are employed by SEPTA or the City of Philadelphia—have moved for summary judgment. For the reasons that follow, the Court will grant in part and deny in part the motions for summary judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

On April 4, 2013, Plaintiff Nasir Finnemen entered the SEPTA station at Kensington and Allegheny Avenue. Finnemen Dep. 97:9–17, Sept. 24, 2016, ECF No. 67–3 [hereinafter Finnemen Dep. I]. As he was going up the station's escalator, he looked back and saw a man that he thought was "suspicious," due to the man's dark clothes, hood, and hat, as well as the fact that it was roughly 11:15 or 11:20 p.m. Id. at 99:11–17. After Plaintiff went

---

**1.** Plaintiff's original complaint identified him as "Nasir Finnerman," but his current lawyer has clarified that his last name is actually Finnemen. ECF No. 59.

**2.** The facts are presented in the light most favorable to Plaintiff, the nonmoving party.

through the turnstile and entered the platform, he looked back again, and the man was "right behind" Plaintiff, on the platform. Id. at 99:17–19. He was giving Plaintiff "strange faces" and holding his right hand under his hoodie; Plaintiff thought he was "acting like he was going to, you know, pull out something." Id. at 99:23–100:15. Plaintiff, who felt like he was in "a dangerous situation," looked to the side and "[saw] the SEPTA door cracked open." Id. at 100:18–20. Plaintiff chose to enter the SEPTA booth, where he squatted behind the door, telling the SEPTA operator in the booth—Defendant Melody Campbell—"that there's a guy out there." Id. at 100:20–24. Campbell told Plaintiff, "[C]ome on, he's not worrying about you," so Plaintiff got up and returned to the platform. Id. at 100:23–25.

Campbell, who maintains—contrary to Plaintiff's story—that Plaintiff attempted to rob and assault her when he entered the booth, then called SEPTA's Control Center to report that she had just been assaulted. Campbell Dep. 75:16–76:11; 80:19–81:1, Oct. 17, 2016, ECF No. 62–1. The Control Center responded that they were sending help, and Defendants SEPTA Police Officers Caban and Boyd responded to the radio call. Id. at 81:2–21.

As Plaintiff was standing on the platform, continuing to wait for the train, Officer Caban arrived and spoke to Campbell, who identified Plaintiff as the alleged assailant. Id. at 82:15–23. Officer Caban then approached Plaintiff and told him to turn around and put his hands on the wall. Finnemen Dep. I at 101:6–9. Officer Caban handcuffed Plaintiff and began "pushing [Plaintiff] down" to the station's entrance—walking at the officer's normal pace, even though Plaintiff was injured and walking with a cane. Id. at 101:7–11. Officer Caban then searched Plaintiff, took him out of the station, put him in a patrol

car, and took him to a police station, where Plaintiff remained for 24 hours. Id. at 101:12–17. Plaintiff was then taken to the Curran–Fromhold Correctional Facility ("CFCF"), where he remained for approximately six days, until his father posted bail for him. Finnemen Dep. 67:8–12; 69:10–20, Oct. 10, 2016, ECF No. 67–4 [hereinafter Finnemen Dep. II].

Plaintiff was then charged with robbery, attempted theft by unlawful taking, receiving stolen property, simple assault, and recklessly endangering another person. SEPTA Defs.' Mot. Summ. J. Ex. F, ECF No. 62–1. Plaintiff attended a preliminary hearing on these charges, where Campbell testified as a witness for the Commonwealth. Finnemen Dep. I 32:25–33:14. Ultimately, the Philadelphia District Attorney's Office dropped the charges. Id. at 33:24–34:2.

Plaintiff filed a pro se complaint on April 7, 2015. ECF No. 3. Eventually, he obtained a lawyer, and his claims went through several rounds of pleadings and dismissal before discovery began. Plaintiff's remaining claims are: (1) malicious prosecution, as to Campbell, through § 1983; (2) false arrest, false imprisonment, excessive force, and malicious prosecution as to Officers Caban and Boyd; (3) deliberate indifference to the need for medical treatment, as to unknown and unnamed Philadelphia Police Officers and employees of the Department of Corrections; (4) malicious prosecution, as to Campbell, through state tort law; (5) malicious prosecution, as to Detective Michelle Yerkes, through state tort law; (6) malicious prosecution, as to Officers Caban and Boyd, through state tort law; and (7) assault and battery, as to Officers Caban and Boyd. See Second Am. Compl., ECF No. 45.

On November 9, 2016, Campbell, Caban, and Boyd (collectively, the "SEPTA Defen-

dants"), as well as Yerkes, filed motions for summary judgment. ECF Nos. 62, 63. Plaintiff did not respond. The Court then scheduled a hearing on the motions for July 5, 2017, ECF No. 66, and instructed that if Plaintiff intended to oppose the motions with written submissions, he should file those submissions by June 2, 2017, ECF No. 65.

Plaintiff did not file anything by June 2. Rather, on June 20, Plaintiff filed a response to the SEPTA Defendants' motion.[3] ECF No. 67.

On June 30, Plaintiff filed a one-sentence response to the Yerkes motion, stating that he does not oppose her motion for summary judgment. ECF No. 68. The Court has reviewed the motion on the merits and will grant Yerkes's motion for summary judgment because there is no genuine dispute as to any material fact and Yerkes is entitled to judgment as a matter of law.[4] Fed. R. Civ. P. 56(a).

The SEPTA Defendants' motion for summary judgment is now ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250, 106 S.Ct. 2505 (quoting Fed. R. Civ. P 56(e)).

## III. DISCUSSION

### A. Malicious Prosecution Claims Against Campbell

Plaintiff brings claims of malicious prosecution against Campbell under both § 1983 and state tort law. Specifically, he says, Campbell "intentionally fabricated what occurred in the SEPTA booth for the malicious purpose of having plaintiff arrested and criminally prosecuted, upon her irrational belief that plaintiff was a potential criminal merely because he mistakenly entered the SEPTA booth." Second Am. Compl. ¶ 20.

To succeed on a claim for malicious prosecution under § 1983, a plaintiff must

---

3. At the hearing on the motion, Plaintiff's counsel averred that his response was late due to his own medical issues. The Court accepts this explanation and will consider the response as if filed nunc pro tunc.

4. Yerkes is a Philadelphia Detective. Her motion argued, correctly, that there is no record evidence supporting the elements of malicious prosecution as to Yerkes.

show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). To prove a claim for malicious prosecution under Pennsylvania tort law, plaintiff must prove all but the fifth element listed above. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000).

■ Campbell argues that Plaintiff's claims must fail because (1) she did not initiate the criminal proceedings against Plaintiff, and (2) she did not act "maliciously or for a purpose other than to bring Plaintiff to justice." SEPTA Defs.' Mem. Law at 4–7, ECF No. 62. These arguments fail.

First, Campbell points to Falat v. County of Hunterdon, No. 12-6804, 2014 WL 6611493 (D.N.J. Nov. 21, 2014), for the proposition that "an allegation that a defendant merely provided information to prosecutors is insufficient to plead the 'initiated criminal proceedings' element" of a malicious prosecution claim. Id. at *16. Campbell argues that, because all she did is give information to police and prosecutors regarding Plaintiff's alleged crimes against her, she could not have initiated criminal proceedings. But Campbell fails to note that the Falat court went on to say that "providing information regarding possible criminal activity—which is insufficient for a claim of malicious prosecution—is distinguishable from actively encouraging prosecution or misleading prosecutors, which may state the 'initiated' element." Id. (emphasis added) (citing Griffiths v. CIGNA Corp., 988 F.2d 457, 464 (3d Cir.

1993)). That is, if Campbell actively misled officials regarding Plaintiff's conduct, then Plaintiff can prove that she initiated the prosecution. And, of course, construing the disputed facts—what happened inside the SEPTA booth—in the light most favorable to Plaintiff, Campbell lied about Plaintiff's actions to the officers and during the preliminary hearing.

For similar reasons, there is a genuine dispute of material fact regarding whether Campbell acted maliciously or "for a purpose other than bringing the plaintiff to justice." Marasco, 318 F.3d at 521.

In this case, the parties tell two fully divergent stories about what happened in the SEPTA booth. According to Plaintiff, he entered the SEPTA booth and squatted behind the door, telling the SEPTA operator in the booth—Defendant Melody Campbell—"that there's a guy out there." Finnemen Dep. I 100:20–24. Campbell told Plaintiff, "[C]ome on, he's not worrying about you," so Plaintiff got up and returned to the platform. Id. at 100:23–25. He stated that he "wasn't fighting with anybody in there" and that at no point did he "reach or grab for [her] bag." Id. at 137:12–15; 140:8–11. Campbell, on the other hand, testified that Plaintiff did not enter the booth to seek shelter, and did not tell her that he feared for his safety, but rather, that Plaintiff:

> pushed me out of the way. He walked up to the window and said, where is it, where is it. And I said, where is what. And when he turned around, I was still standing with the door open behind me. When he turned around, I screamed really loud. And then he reached over, tried to take my purse, and I don't know how it happened, but he and I started tussling with each other. He tripped over the chair and he fell.

Campbell Dep. 74:25–77:19. Then, she says, she kicked Plaintiff while he was

lying on his back, id. at 77:16–24, punched him, and eventually pushed him out of the booth, id. at 80:15–23.

Obviously, what happened in the booth is disputed. The question, then, is whether this dispute is "genuine" and "material," such that it defeats Campbell's motion for summary judgment.

The first question is whether the disputed facts—mostly, what occurred in the booth—are material. As the Supreme Court has stated, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. In this case, then, does the factual dispute over what happened in the booth bear on whether, as a matter of law, Campbell "acted maliciously or for a purpose other than bringing the plaintiff to justice"? Marasco, 318 F.3d at 521.

The answer is yes. If Plaintiff's story is true, then Campbell's story of yelling and physical fighting is necessarily false, at least in part. And, as courts have held, false testimony can create a reasonable inference of malicious intent for the purposes of a claim of malicious prosecution. See, e.g., Vanderklok v. United States, No. 15-370, 2016 WL 4366976, at *12 (E.D. Pa. Aug. 16, 2016) (" 'Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose.' Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988), abrogated on other grounds, Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A jury could reasonably conclude that [the defendant] acted with 'ill will' by falsely reporting to the police that [the plaintiff] stated he could bring a bomb through airport security undetected."); Johnson v. Sch. Dist. of Phila., No. 06-4826, 2008 WL 3927381, at *9 (E.D. Pa. Aug. 21, 2008) ("While there is no evidence in the record that directly indicates a motive for Officer Hazzard's alleged misconduct, Plaintiffs assert that Officer Hazzard gave inaccurate and incomplete testimony at Ms. Johnson's preliminary hearing. If credited, a jury could reasonably infer that Officer Hazzard's supposedly false testimony was evidence of a malicious intent."); Telepo v. Palmer Twp., No. 97-6053, 40 F.Supp.2d 596, 610 (E.D. Pa. 1999) ("A person can be liable for malicious prosecution if he 'fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.' " (alterations in original) (quoting Garcia v. Micewski, No. 97-5379, 1998 WL 547246, at *9 (E.D. Pa. Aug. 24, 1998))). In other words, if Campbell lied to the SEPTA officers and at the preliminary hearing—as she did if the facts are viewed in the light most favorable to Plaintiff—a reasonable jury could infer that she acted with malicious intent. Accordingly, the dispute over what occurred in the booth is material to the substantive resolution of Plaintiff's claim of malicious prosecution.

This dispute is also genuine, because— on the record presented at this stage—"a reasonable jury could return a verdict for [Plaintiff,] the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Specifically, under Federal Rule of Civil Procedure 56, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Campbell points to her own deposition testimony as evidence that she necessarily acted without malicious intent. But she has failed to show, as she must, that this testimony establishes the absence of a genuine issue of material fact—because of Plaintiff's deposition testimony, and the reasonable inferences that can be drawn therefrom. After all, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Critically, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Under Rule 56(c), deposition testimony—at least, where not proven false [5]—is such evidence, and so the disputed issue of what actually happened inside Campbell's SEPTA booth is a genuine question that must be decided by a finder of fact at trial.

Accordingly, Campbell has failed to show that there is no genuine issue of material fact regarding Plaintiff's claims of malicious prosecution.

■■■■ Campbell is also not entitled to sovereign immunity on the state law claim of malicious prosecution, as she contends. Campbell argues that she, as a SEPTA employee, must receive sovereign immunity for her actions—but she fails to show why, or even argue that, her actions at

issue were within the scope of her employment, as is required for a successful assertion of sovereign immunity. See, e.g., Kull v. Guisse, 81 A.3d 148, 154 (Pa. Commw. Ct. 2013) ("Generally, sovereign immunity protects Commonwealth officials and employees acting within the scope of their duties from civil liability." (citing 1 Pa. Cons. Stat. Ann. § 2310)). Where an individual acts with "actual fraud, actual malice, or willful misconduct," she is acting "outside the scope of employment for purposes of sovereign immunity." Schell v. Guth, 88 A.3d 1053, 1070 (Pa. Commw. Ct. 2014). Willful misconduct is "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994) (quoting King v. Breach, 115 Pa.Cmwlth. 355, 540 A.2d 976, 981 (1988)). Accordingly, if Plaintiff's version of events is true, Campbell acted with willful misconduct and thus acted outside the scope of her employment. Therefore, Campbell is not entitled to sovereign immunity.

Accordingly, the Court will deny Campbell's motion for summary judgment as to the malicious prosecution claims against her.

## B. § 1983 Claims Against Caban and Boyd

Plaintiff claims that SEPTA Officers Caban and Boyd violated his Fourteenth Amendment rights through false arrest,

---

5. For example, in this case, if Campbell had presented additional evidence showing that her version of events is true, and Plaintiff's is false–such as, perhaps, a video recording of the events inside the booth–she might have been able to show that no reasonable jury could believe Plaintiff's story. In that case, there would be no "genuine" issue of fact. But Campbell has not shown as much–she has argued only that the Court should believe her version of events, and disbelieve Plaintiff's. This argument is insufficient to support a motion for summary judgment, where the events are disputed.

false imprisonment, excessive force, and malicious prosecution.

### 1. False Arrest

"To prevail on a false arrest claim under Section 1983, a plaintiff must demonstrate that the police lacked probable cause to make the arrest." Campeggio v. Upper Pottsgrove Twp., No. 14-1286, 2014 WL 4435396, at *4 (E.D. Pa. Sept. 8, 2014) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). The question is not whether the plaintiff actually committed the crime, but simply "whether the arresting officers had probable cause to believe the plaintiff committed the offense." Id. (citing Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Generally, "the question of probable cause in a section 1983 damage suit is one for the jury." Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). However, "a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.'" Marasco, 318 F.3d at 514 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

"The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." Wright v. City of Phila., 409 F.3d 595, 603 (3d Cir. 2005). An officer is not obligated to conduct an independent investigation to verify statements made by a credible eyewitness if those statements provide him with probable cause to arrest. See Merkle, 211 F.3d at 790 n.8; see also Potts v. City of Phila., 224 F.Supp.2d 919, 934 (E.D. Pa. 2002) ("A police officer, after all, is not obligated 'to conduct a mini-trial' before arresting a suspect." (quoting Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996))). Further, "[e]xculpatory evidence does not eliminate probable cause simply because it might prove useful to a jury weighing reasonable doubt." Eckman v. Lancaster City, 742 F.Supp.2d 638, 651 (E.D. Pa. 2010) (citing Steele v. City of Erie, 113 Fed.Appx. 456, 459 (3d Cir. 2004)).

However, "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh [a positive identification by a victim witness] such that probable cause would not exist." Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000). This is a fact-intensive and case-specific inquiry. See id. Wilson provides the following examples of such a situation:

> [I]f two identifying witnesses had told the officer that the robber was 7', and the officer knew that the person in the photograph was 5', the positive identification would not be enough. Likewise, an otherwise credible victim identification would not provide probable cause if police officers contemporaneously possessed reliable DNA evidence which determined conclusively that the accused could not have committed the crime. Or, if Druce had, equally firmly, picked another person from the photo array, Braverman's identification might not have been sufficient for Russo to conclude that Wilson "probably" committed the crime.

Id.

The facts of this case do not rise to the level of the facts proposed in Wilson.

Defendants assert that Officers Caban and Boyd had probable cause based on (1) the information that Officer Caban had at the time of the arrest and (2) Ms. Campbell's eyewitness identification of Plaintiff. In turn, Plaintiff argues that Office Caban lacked probable cause due to exculpatory evidence, which he failed to uncover because he did not conduct a reasonable investigation before arresting Plaintiff and taking him away. Specifically, Plaintiff alleges that Officer Caban should have doubted his guilt because when the Officers arrived on the scene, Plaintiff was merely standing on the train platform with his cane in hand and had not attempted to flee, that Plaintiff walked with a limp, and that Plaintiff had no fruits of a crime in his possession.

Viewing these allegations in the light most favorable to Plaintiff, they do support Plaintiff's claim that he was not guilty of the offenses for which he was arrested and ultimately charged. However, they do not establish that Officers Caban and Boyd lacked probable cause to arrest Plaintiff. Most notably, the facts alleged by Plaintiff do not negate that a reasonable officer in the situation Caban and Boyd faced—having received an explicit report of a crime from Defendant Campbell—could believe that Plaintiff had indeed committed a crime. The evidence Plaintiff discusses is not incontrovertibly exculpatory, but rather is evidence that is "subject to a variety of interpretations." Kelly v. Jones, 148 F.Supp.3d 395, 403 (E.D. Pa. 2015) (citing Romero v. Fay, 45 F.3d 1472, 1477 (10th Cir. 1995)). For example, though the fact that Plaintiff did not flee the train platform does perhaps suggest that he did not attempt to rob Defendant Campbell in the SEPTA booth, an unintelligent or particularly cocky would-be robber might not feel a need to flee after a failed robbery, where he would have possessed no fruits of the crime. Or perhaps such a criminal might

have expected a train to arrive any minute, allowing him to flee the scene more swiftly than he could have on his own two feet. And, importantly, "[t]he Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Accordingly, the probable cause inquiry does not ask whether it is true or even likely that Plaintiff was guilty, but whether a reasonable officer in Boyd and Caban's position could have believed that he was. Here, because of Campbell's statement, and notwithstanding potentially exculpatory evidence that was not unassailable, such an officer could have reasonably held that belief.

Accordingly, the Court will grant the motion for summary judgment as to Plaintiff's claim of false arrest.

### 2. False Imprisonment

█ "To state a claim for false imprisonment, a plaintiff must establish: (1) that [he] was detained; and (2) that the detention was unlawful." James v. City of Wilkes–Barre, 700 F.3d 675, 682–83 (3d Cir. 2012). "A false imprisonment claim under § 1983 which is based on an arrest made without probable cause ... is grounded in the Fourth Amendment's guarantee against unreasonable seizures." Id. at 683.

Here, as established above, Officers Boyd and Caban had probable cause to arrest Plaintiff. Accordingly, Plaintiff has not established that his detention was unlawful, and the Court will grant the motion for summary judgment as to Plaintiff's claim of false imprisonment.

### 3. Excessive Force

When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly

characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Such a claim is analyzed under an "objective reasonableness" standard. Id. at 388, 109 S.Ct. 1865. This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396, 109 S.Ct. 1865. Excessive force, like probable cause, is usually a question of fact, but can be decided before trial if an officer's use of force was objectively reasonable, even viewing the facts in favor of the plaintiff. See Abraham v. Raso, 183 F.3d 279, 289–90 (3d Cir. 1999).

Here, there are two categories of facts: the facts involving allegations actually raised in the Second Amended Complaint, and the facts involving allegations raised for the first time in Plaintiff's response to the motion for summary judgment.

■ In the Second Amended Complaint, the only factual allegation in support of Plaintiff's claim of excessive force is that Caban and Boyd "forcefully arrested plaintiff by intentionally placing the handcuffs on him very tightly," ¶ 18, and that his handcuffing caused him "extreme pain in his wrists and shoulders," ¶ 22. Without more, Plaintiff has not offered any reason to believe that his handcuffing was unreasonable, considering that Caban and Boyd had probable cause to believe that he had attempted to forcibly rob Defendant Campbell. See Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."). Nor has Plaintiff contended that he offered any reason for the defendants to believe that he had been in pain, which could support a claim of excessive force for tight handcuffs. See Kopec v. Tate, 361 F.3d 772, 780 (3d Cir. 2004) ("[A] viable excessive force claim requires that the officer or officers had either constructive or actual notice that the force applied by the handcuffs was excessive under the circumstances, yet the officer or officers failed to respond to such notice in a reasonable manner.").

Plaintiff also argues, in his response to the motion for summary judgment, that the officers used excessive force by shoving Plaintiff's crutches into his chest and by forcing him off the platform quickly, despite Plaintiff's injuries and mobility issues. Setting aside the fact that these allegations were not raised in the Second Amended Complaint, Plaintiff has still failed to show that there are genuine issues of material fact as to these allegations. He points to no portion of his deposition testimony, or any other evidence, supporting these claims. Indeed, Plaintiff testified that the officers did not push, shove, hit, kick, or insult Plaintiff, see Finnemen Dep. I at 145:1–148:10; that Officer Caban placed him in the police car "gently," id. at 149:15–24; and that Plaintiff never asked for a break to deal with his pain level and does not remember asking Officer Caban to slow down or stop, id. at 154:16–155:1.

Accordingly, the Court will grant the motion for summary judgment as to Plaintiff's claim of excessive force.

4. Malicious Prosecution

Again, to bring a claim of malicious prosecution under § 1983, a plaintiff must

show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Marasco, 318 F.3d at 521.

As discussed above, Officers Caban and Boyd had probable cause to arrest Plaintiff. Therefore, the Court will grant Defendants' motion for summary judgment as to the § 1983 claim of malicious prosecution as to Caban and Boyd.

### C. State Tort Claims Against Caban and Boyd

Plaintiff also brings two state tort law claims against Officers Caban and Boyd: (1) malicious prosecution and (2) assault and battery. Defendants argue that these claims fail not only on the merits, but also because they are barred by Pennsylvania's sovereign immunity laws.

Plaintiff argues only that Officer Caban's conduct does not fall within the scope of his duties, and thus is not entitled to sovereign immunity, because Officer Caban acted without probable cause. Not only is this not responsive to the matter of sovereign immunity, but as discussed above, Officer Caban did have probable cause.

Accordingly, the Officers are entitled to the benefits of sovereign immunity, and the Court will grant their motion for summary judgment as to Plaintiff's state law claims against them.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions for Summary Judgment as to all claims except those against Defendant Campbell. An appropriate Order follows.

### ORDER

**AND NOW,** this **25th** day of **July, 2017,** for the reasons set forth in the accompanying memorandum, the following is hereby **ORDERED:**

(1) Defendant Michelle Yerkes's Motion for Summary Judgment (ECF No. 63) is **GRANTED.**

(2) The SEPTA Defendants' Motion for Summary Judgment (ECF No. 62) is **GRANTED** as to Defendants Caban and Boyd and **DENIED** as to Defendant Campbell.

**AND IT IS SO ORDERED.**